**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HERBERT SAINT AUBYN POWELL,  :
                             :  Civil Action No. 11-3209 (SDW)
            Petitioner,      :
                             :
         v.                  :  **OPINION**
                             :
ERIC H. HOLDER, JR., et al., :
                             :
            Respondents.     :

**APPEARANCES**:

Petitioner pro se                Counsel for Respondents
Herbert Saint Aubyn Powell       Peter G. O'Malley
Essex County Corr. Fac.          Asst. U.S. Attorney
Newark, NJ 07105                 Newark, NJ 07102

**WIGENTON**, District Judge

Petitioner Herbert Saint Aubyn Powell, an alien detained in connection with removal proceedings and currently confined at Essex County Correctional Facility in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The respondents are Warden Roy Hendricks,

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Attorney General Eric H. Holder, Jr., and Director Kimberly Zanotti.

## I. BACKGROUND

Petitioner is a native and citizen of Jamaica, admitted to the United States on an immigrant visa when he was a child. He has an extensive criminal record in the United States, dating back to 1996, including convictions for robbery, theft by deception, bank fraud and conspiracy to commit bank fraud.

On September 24, 2008, while Petitioner was confined pursuant to his criminal conviction, he was served with a Notice to Appear in immigration proceedings, advising him that he was being charged as removable based on hi conviction for bank fraud. Petitioner was taken into immigration custody on February 8, 2010, upon release from his term of imprisonment on the federal bank fraud charges. A second NTA was served on or about February 18, 2010, referencing the same charges as well as additional charges.

On May 11, 2011, an Immigration Judge ordered Petitioner removed. Petitioner appealed to the Board of Immigration Appeals. On August 26, 2011, the Board of Immigration Appeals dismissed Petitioner's appeal, making it administratively final. Petitioner then filed a petition for review with the U.S. Court of Appeals for the Third Circuit. See Powell v. Attorney General, No. 11-3765 (3d Cir.). By Orders entered November 9,

2011, and January 19, 2012, the Court of Appeals denied Petitioner's motions for stay of removal.  More specifically, in its November 2011 Order, the Court of Appeals stated that Petitioner had not shown a likelihood of success on the merits or that a balancing of the preliminary-injunction factors of Douglas v. Ashcroft, 374 F.3d 230 (3d Cir. 2004), merited a stay of removal pending disposition of the petition for review.  The petition for review remains pending, otherwise.

On May 31, 2011, before the Order of removal became administratively final, Petitioner filed this Petition for writ of habeas corpus, challenging the constitutionality of his prolonged detention in connection with his removal proceedings.

In support of this Petition, Petitioner relies upon Demore v. Kim, 538 U.S. 510 (2004) (relating to constitutionality of pre-removal-order detention), and Zadvydas v. Davis, 533 U.S. 678 (2001) (relating to constitutionality of post-removal-order detention).

## II.  ANALYSIS

Under 8 U.S.C. § 1226(c), the Attorney General is required to detain certain criminal during their removal proceedings ("pre-removal-order detention").  There is no dispute that Petitioner was subject to mandatory pre-removal order detention under this provision based upon his felony convictions.

Although § 1226(c) does not provide for bail, an alien detained pursuant to § 1226(c) may move for a <u>Joseph</u> hearing to determine if he falls within the categories of aliens subject to mandatory detention. <u>In re Joseph</u>, 22 I.&N. Dec. 799 (BIA 1999).[2]

In <u>Demore v. Kim</u>, 538 U.S. 510 (2003), the Supreme Court considered whether mandatory pre-removal-order detention under § 1226(c) violates due process. In the case of an alien who conceded that he fell within the categories of deportable aliens subject to mandatory detention under § 1226(c), the Supreme Court found that mandatory detention of deportable criminal aliens pending their removal proceedings did not violate due process. 538 U.S. at 531. The Court noted that such proceedings typically last only a few months and that pre-removal-order detention has a finite termination point - issuance of a final decision on removability. 538 U.S. at 529-530. In his concurrence, however, Justice Kennedy took the position that circumstances could arise in which long-term pre-removal-order detention might violate due process. 538 U.S. at 532-33 (Kennedy, J., concurring).

Taking note of Justice Kennedy's guidance, the Court of Appeals for the Third Circuit recently has held that there are

---

[2] At the <u>Joseph</u> hearing, a detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the BICE is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. <u>See</u> 8 C.F.R. § 3.19(h)(2)(ii).

4

due process limitations on the duration of pre-removal-order mandatory detention.

> Under the Supreme Court's holding [in Demore], Congress did not violate the Constitution when it authorized mandatory detention without a bond hearing for certain criminal aliens under § 1226(c).  This means that the Executive Branch must detain an alien at the beginning of removal proceedings, without a bond hearing -- and may do so consistent with the Due Process Clause -- so long as the alien is given some sort of hearing when initially detained at which he may challenge the basis of his detention.  [This is the Joseph hearing.]  However, the constitutionality of this practice is a function of the length of the detention.  At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.  This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances.  We decline to establish a universal point at which detention will always be considered unreasonable.
>
> ...
>
>     In short, when detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

Diop v. ICE/Homeland Security, 656 F.3d 221, 232-33 (3d Cir. Sept. 1, 2011) (footnotes omitted).

Turning to the question of when pre-removal-order detention becomes "unreasonable," the Court of Appeals noted that the petitioner in Demore had been detained only six months, only slightly longer than the average length of pre-removal-order

5

detention in contested cases, when his petition was decided.  The Court of Appeals agreed with the government that the reasonableness determination must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case, but also held that the reasonableness enquiry must take into account errors in the proceedings that cause unnecessary delay.  In Diop, the Court of Appeals concluded that the petitioner's 35-month detention period, extended by the immigration judge's numerous errors and the government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, was unreasonably long.

During the pendency of this matter, however, a final order of removal has been entered against Petitioner.[3]  Because a final

---

[3] An order of removal becomes administratively final:

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;
(b) Upon waiver of appeal by the respondent;
(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;
(d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;
(e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or
(f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period, or upon the failure to post a required voluntary departure bond within 5 business days. If the respondent has filed a timely appeal with the Board,

order of removal has been entered, Petitioner is no longer detained pursuant to § 1226(c), which governs only detention <u>prior to</u> the entry of a final order of removal.  Instead, Petitioner is now detained pursuant to 8 U.S.C. § 1231(a), which governs the detention of an alien subject to a final order of removal ("post-removal-order detention").

Because Petitioner is no longer detained pursuant to § 1226(c), as he was at the time he filed this Petition, the challenge to his pre-removal-order detention has become moot.[4]  As there is no longer a live "case or controversy" regarding Petitioner's pre-removal order detention, <u>see</u> U.S. Constitution, Article III, the challenge to Petitioner's pre-removal-order detention will be dismissed.  <u>See</u> <u>Rodney v. Mukasey</u>, 340 Fed.Appx. 761 (3d Cir. 2009).

---

> the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of the voluntary departure period granted or reinstated by the Board or the Attorney General.

8 U.S.C. § 1241.1.

[4] Because a final order of removal has now been issued against Petitoner, it is not likely that he will be detained ever again under the pre-removal-order detention provision.  Thus, this is not the type of case subject to the mootness exception for cases that are "capable of repetition" while "evading review."  See <u>De La Teja v. United States</u>, 321 F.3d 1357, 1361-63 (11th Cir. 2003).  This exception applies only when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  <u>Weinstein v. Bradford</u>, 423 U.S. 147, 149 (1975) (per curiam).

To the extent the Petition could be construed as asserting a challenge to Petitioner's post-removal order detention, based upon his reliance on the Zadvydas case, such challenge is premature. Post-removal-order detention is governed by 8 U.S.C. § 1231(a). Section 1231(a)(2) requires the detention of such aliens during a 90-day "removal period." Detention beyond the end of the 90-day removal period is governed by the constitutional principles set forth by the Supreme Court in Zadvydas v. Davis, 533 U.S. 678 (2001).

Section 1231(a)(1) requires the Attorney General to attempt to effectuate removal within the 90-day removal period.

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).[5]

Section 1231(a)(6) permits continued detention if removal is not effected within 90 days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal

---

[5] Because the Court of Appeals has denied Petitioner's motions for stay of removal, the removal period began to run on the date the order of removal became administratively final, that is, on August 26, 2011.

reasonableness standard. Specifically, once a presumptively-reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. See Zadvydas v. Davis, 533 U.S. 678 (2001); Clark v. Martinez, 543 U.S. 371 (2005).

Thus, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. Zadvydas, 533 U.S. at 699-701. But see 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.")

Here, Petitioner's post-removal order detention had not begun to run at the time he filed the Petition,[6] nor has

---

[6] To state a claim under Zadvydas, the six-month presumptively-reasonable removal period must have expired at the time the Petition is filed; a prematurely filed petition must be dismissed without prejudice to the filing of a new Petition once the removal period has expired. See, e.g., Rodney v. Mukasey, 340 Fed.Appx. 761 (3d Cir. 2009); Akinvale v. Ashcroft, 287 F.3d 1050, 1051 (11th cir. 2002). Thus, this claim was not ripe when

Petitioner alleged any facts that would suggest that his removal is not likely to occur in the reasonably foreseeable future. Petitioner has not suggested any individual barriers to his repatriation, see Zadvydas, 533 U.S. at 684-85 (alien petitioner Zadvydas was a "stateless" individual), nor has he suggested any institutional barrier to his removal, see Zadvydas, 533 U.S. at 686 (alien petitioner Kim Ho Ma was from Cambodia, a country with which the United States has no repatriation agreement).

Accordingly, any claim challenging the constitutionality of Petitioner's post-removal order detention will be dismissed without prejudice as premature.

### III.   CONCLUSION

For the reasons set forth above, the Petition will be dismissed.  An appropriate order follows.

s/Susan D. Wigenton
Susan D. Wigenton
United States District Judge

Dated: March 5, 2012

---

the Petition was filed.  See, e.g., Ferrer-chacon v. Department of Homeland Security, 2006 WL 3392930 (D.N.J. 2006).